## Nationwide Mutual Insurance Company v. Gardner

C.P. of Huntingdon County, no. 05-51.

*Dennis Stofko,* for plaintiff.
*Nathan Karn,* for defendant.

KURTZ, *J.,* January 19, 2006—In this insurance coverage dispute, plaintiffs (Nationwide) have moved for summary judgment.[1] The motion is appropriate since "[t]he proper construction of an insurance policy is a matter of law that a court may resolve pursuant to a motion for summary judgment." *Harstead v. Diamond State Insurance Company,* 555 Pa. 159, 162-63, 723 A.2d 179, 180 (1999). The facts that are the backdrop for this case can be succinctly summarized.

## BACKGROUND

On July 25, 2004, 12-year-old Corey Lee Secrest was riding as a passenger on an all-terrain vehicle (ATV) operated by 13-year-old Matthew Gardner. Around 6 p.m., Gardner was traveling on Township Road T501 in

---

1. Pa.R.C.P. 1035.2(1).

Shirley Township, Huntingdon County, when he encountered a tractor-trailer approaching in the opposite direction. Sadly, an accident ensued as a consequence of which Corey Secrest sustained fatal injuries.

A civil action was commenced August 2, 2004, by the estate of Corey Lee Secrest against Matthew Gardner and his father, David Gardner. This action was initiated January 19, 2005, since Mr. Gardner was the owner of three separate policies of insurance issued by Nationwide. More specifically, Mr. Gardner owned two homeowner insurance policies as well as a separate umbrella policy which acts as an excess policy for the homeowner policies. All three policies were in effect on the date of the accident.

In its motion for summary judgment, Nationwide set forth that the insurance policies owned by Mr. Gardner "contain valid enforceable exclusions precluding indemnity and a duty to defend from any and all claims arising from Matthew Gardner's operation of the ATV." In this regard, the exclusions relied upon were recited.

First, the following provisions from the homeowner policies were set forth:

"Section I.

"*Property coverage.*

"*Coverage C—Personal property.*

"*Property not covered.* We do not cover

". . . (4) *motor vehicles* or all other motorized land conveyances including the following, . . . .

"Section II.

"*Liability exclusions.*

"(1) Coverage E—Personal liability and coverage F—Medical payments to others do not apply to *bodily injury or property damage:*

". . . (g) arising out of the ownership, maintenance or use of, or loading or unloading of; entrustment or the negligent supervision by an insured of; or statutorily imposed liability on an insured related to the use of:

"(1) an aircraft.

"(2) a *motor vehicle* or all other motorized land conveyance owned by or operated by, or rented or loaned to an *insured.*"

Next, Nationwide recited from the umbrella policy the provision it asserted precludes coverage:

"*Exclusions.*

"Excess liability and additional coverages do not apply to:

". . . (6) An occurrence arising out of the ownership, maintenance, loading or unloading of; entrustment or negligent supervision by an insured of; or statutorily imposed liability of an insured relating to the use of:

". . . (c) a motorcycle, motor scooter, motorized bicycle, moped or similar type motorized land conveyance unless insurance is provided by a listed underlying policy.

"(d) a land motor vehicle, trailer or semi-trailer unless insurance is provided by a listed underlying policy."

The conclusion advanced by Nationwide is that the operation of an ATV on a public road falls within the policy exclusions set forth above. Argument on the motion was presented November 21, 2005, and we have had the benefit of outstanding, comprehensive briefs.

Based upon our consideration of the briefs and arguments, the motion will be granted.

## LEGAL LANDSCAPE

The Supreme Court of Pennsylvania has outlined the standards for interpreting a contract of insurance. In *Madison Construction Company v. The Harleysville Mutual Insurance Company,* 557 Pa. 595, 735 A.2d 100 (1999), the issue was whether a pollution exclusion clause in a policy of commercial general liability insurance relieved Harleysville of its duty to defend in a personal injury action. The court concluded that it did and provided the following guidance:

"Where an insurer relies on a policy exclusion as the basis for its denial of coverage and refusal to defend, the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving such defense. *Erie Insurance Exchange v. Transamerica Insurance Co.,* 516 Pa. 574, 580, 533 A.2d 1363, 1366 (1987) (citing *Miller v. Boston Ins. Co.,* 420 Pa. 566, 570, 218 A.2d 275, 277 (1966)); see also, *Armon v. Aetna Cas. & Surety Co.,* 369 Pa. 465, 469, 87 A.2d 302, 304 (1952). To determine whether Harleysville has met its burden of proof, we rely on well-settled principles of contract interpretation.

" '[T]he task of interpreting [an insurance] contract is generally performed by a court rather than by a jury. The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agree-

ment. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language.'

"*Gene & Harvey Builders v. Pennsylvania Mfrs. Ass'n,* 512 Pa. 420, 426, 517 A.2d 910, 913 (1986) (quoting *Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 304-305, 469 A.2d 563, 566 (1983)). (citations omitted) Contractual language is ambiguous 'if it is reasonably susceptible of different construction and capable of being understood in more than one sense.' *Hutchison v. Sunbeam Coal Co.,* 513 Pa. 192, 201, 519 A.2d 385, 390 (1986). This is not a question to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. See *Gamble Farm,* 440 Pa. Super. [501] at 505, 656 A.2d [142] at 144 [(1995)]; *Techalloy,* 338 Pa. Super. [1] at 7, 487 A.2d [820] at 823 [(1984)]. We will not, however, distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity. *Stewart v. McChesney,* 498 Pa. 45, 53, 444 A.2d 659, 663 (1982)." *Madison,* at pp. 605-606, 735 A.2d at p. 106.

Our duty in this case is to interpret the Nationwide policies in a manner consistent with the principles outlined above.

## ANALYSIS

Nationwide's flagship argument is straightforward. It asserts that the policy exclusion 1(g)(2) in the homeowner policies unequivocally proscribes liability coverage arising out of the ownership, maintenance and use of a "mo-

tor vehicle or all other motorized land conveyance." In this regard, it relies on the policy definition of motor vehicle:

" 'Motor Vehicle' means:

"(a) a motorized land vehicle or conveyance, including motorized bicycles or mopeds, designed for travel on public roads or subject to motor vehicle registration.

"(b) a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration.

"(c) any vehicle while being towed by or carried on a vehicle defined in 6(a) or 6(b)."

Nationwide argues that a "fair reading of the policy" leads to the conclusion that the exclusion covers not only motor vehicles but also all other varieties of motorized land conveyance including ATVs. This interpretation, it posits, represents the clear intent of the parties as reflected by the language of the policy. In short, Nationwide reasons that if an ATV is not a motor vehicle under the policy, it most certainly is a motorized land conveyance and therefore the exclusion bars coverage.

Defendants' response to plaintiffs' argument is in the alternative.

First, they focus on the policy definition of "motor vehicle," and assert that, to fall within that definition, a motorized land vehicle or conveyance must either be designed for travel on public roads or be subject to motor vehicle registration.

With that parsing, we can find no fault.

Next, defendants assert that ATVs are not designed for public roads and in Pennsylvania are subject to regulation, including registration, under the Snowmobile and

All-Terrain Vehicle Law,[2] and not the Vehicle Code.[3] Therefore, they argue that ATVs are not motor vehicles under the definition in the Nationwide policies—a conclusion with which we can find no fault.

As a next step, defendants point out that "motorized land conveyance" is not defined in the policies and that the same words appear in both the definition of motor vehicle and Exclusion 1(g)(2). Therefore, they contend the terms must be read inclusively particularly since no punctuation was used to separate or distinguish "motor vehicle" and "motorized land conveyance."

In furtherance of this argument, defendants suggest there is evidence within the policies to support their proposition that "motor vehicle" and "motorized land conveyance" are synonyms. They point to the following policy provision:

"**Property Not Covered.**[4] We do not cover:

"(1) articles separately described and specifically insured in this or any other insurance.

"(2) animals, birds or fish.

"(3) house or travel trailers.

"(4) motor vehicles or all other motorized land conveyances including the following, whether furnished by the manufacturer or an individual:

"(a) their parts or equipment, whether attached to or separated from the **motor vehicle or motorized land conveyance;** or

2. 75 Pa.C.S. §7701 et seq.

3. 75 Pa.C.S. §101 et seq.

4. The homeowner's policies say on page A2 that excepting headings, all defined words are in bold print.

"(b) accessory equipment; or

"(c) any device or instrument including accessories or antennas, for the transmitting, receiving, recording or reproduction of sound or picture which can be operated by the power from the electrical system of the **motor vehicle** or motorized land conveyance. Tapes, discs, reels, cassettes or similar items, including carrying cases for any of these, while in a motorized land vehicle shall not be considered accessory equipment. The most we will pay is $200 in any one loss, regardless of the number of such items. The loss must be caused by a covered peril."

Defendants' spin on this provision is that Nationwide combined the terms "motor vehicle" and "motorized land conveyance" to create motorized land vehicle. They point out the verity that in this section of the policy motor vehicle is in bold print which means it is defined. Therefore, defendants declare that a proper interpretation is that a motorized land conveyance is a motor vehicle and that since an ATV is not a motor vehicle, the exclusion does not apply.

The alternative argument is that the meaning of "motorized land vehicle" is ambiguous and therefore the term must be construed in favor of the insured. *Gene & Harvey Builders Inc. v. Pennsylvania Manufacturers' Association Insurance Co.,* 512 Pa. 420, 426, 517 A.2d 910, 913 (1986).

We admire the effort and ingenuity defendants have demonstrated attempting to persuade this court that either "motor vehicle" and "motorized land conveyance" are synonyms or that an ambiguity exists, but we believe the policy language is clear and unambiguous. While it is true that the policy does not define motorized land

conveyance, our common sense suggests it means any motorized vehicle intended for land use except those designed for travel on public roads or those subject to motor vehicle registration, which are defined as motor vehicles under the policy. While we believe Nationwide could have been specific that ATVs were excluded, we can't twist that opinion into a reason to distort the meaning of the words in order to find coverage. Therefore, we conclude that Exclusion 1(g)(2) applies to ATVs.

Defendants have a fallback position. They assert that ATVs fall within the exception to Exclusion 1(g)(2). The exception found in the homeowner's policies provides as follows:

"This exclusion 1(g)(2) does not apply to:

"(a) a vehicle owned by an *insured* and designed for recreation off public roads while on an *insured location*."

"Insured" and "insured location" are defined as follows:

"(4) 'Insured' means you and the following if residents of your household at the *residence premises*:

"(a) your relatives.

"(b) any other person under age 21 and in the care of you or your relatives.

"(5) 'Insured Location' means:

"(a) the *residence premises.*

"(b) the part of any other premises, structures, and grounds used by you as a residence and shown in the policy; also any of these acquired by you during the policy period for your use as a residence.

"(c) *a premises you use with premises defined in 5(a) or 5(b).* (emphasis added)

"(d) a part of a premises, not owned by an insured, where an insured is temporarily living.

"(e) vacant land, other than farm land, owned by or rented to an insured.

"(f) land, other than farm land, owned by or rented to an insured on which a one or two-family dwelling is being built as a residence for an insured.

"(g) cemetery plots or burial vaults of an insured.

"(h) a part of a premises rented on occasion to an insured for purposes other than business."

Finally, "residence premises" is given this definition:

"(7) 'Residence Premises' means the one, two, three or four-family dwelling, other structures and grounds located at the mailing address shown on the Declarations unless otherwise indicated."

Three arguments have been tendered as to why the exception is applicable to the ATV in this case.

First, and rather esoterically, the absence of a comma is asserted as a basis for the proposition advanced. The argument is premised on the rule of the last antecedent,[5] and a decision by the Honorable Daniel H. Huyett III, in *Motorists Mutual Insurance Company v. Kulp,* 688 F. Supp. 1033 (E.D. Pa. 1988).

Judge Huyett was confronted with a coverage issue in *Motorist Mutual* and specifically he was called upon to

---

5. In Black's, we find this definition of the rule of the last antecedent. "An interpretative principle by which a court determines that qualifying words or phrases modify the words or phrases immediately preceding them and not words or phrases more remote, unless the extension is necessary from the context or the spirit of the entire writing." Black's Law Dictionary, seventh edition 1999 at p. 1334.

parse a policy definition of motor vehicle that included the following:

"(c) a motorized golf cart, snowmobile, or other motorized land vehicle owned by any insured and designed for recreational use off public roads, while off an insured location. . . ."

The issue for Judge Huyett was whether an exclusion in Mr. Kulp's homeowner's policy for bodily injury arising out of the use of a motor vehicle applied to injuries sustained by him in an accident on a minibike in a field some distance from his residence.

Mr. Kulp argued there was an ambiguity since under the last antecedent phrase rule, the phrase "while off an insured location" modified only the phrase "designed for recreational use off public roads." He posited that since there was no reason why the minibike could not have been used on an insured location, it was not "designed for recreational use off public roads while off an insured location," and therefore not within the exclusion.

Judge Huyett rejected the argument, ruling:

"Defendants' reading of the policy is contrary to the plain meaning of the subsection. Reading the subsection in its entirety, and *giving due recognition to the placement of a comma before the limiting phrase,* subsection c clearly and unambiguously defines as a 'motor vehicle' any recreational vehicle designed for use off public roads while it is being used off an insured location; such vehicles are excluded from the definition if they are being used on an insured location.

"Reading section 5 in its entirety, it is equally clear that the phrase 'designed for recreational use off public

roads' distinguishes the vehicles described in subsection c from those described in subsection a. Defendants' argument that 'while off an insured location' modifies only 'designed for recreational use off public roads' tortures the plain meaning of the subsection." *Motorist Mutual,* at p. 1035. (emphasis added)

In this case, defendants have seized upon the fact that no comma separates "while on an insured location" from "designed for recreation off public roads" in the exception to argue that the result should be the opposite of *Motorist Mutual.* Their conclusion is that "[T]he location of actual use is not contemplated in light of the absence of a comma."

While we understand the words we do not hear the music. It seems to us that clear language of the exception indicates that it applies (1) to vehicles owned by an insured, (2) that are designed for recreation off public roads, and (3) while being used on an insured location. That interpretation represents the plain meaning of the language in the policy.

Next, defendants argue that the definition of "insured location" is sufficiently broad to encompass the township road neighboring the "residence premises" and heading to the private road that provides access to the "residence premises." The argument ignores the language of the exception that it was intended to cover vehicles "designed for recreation off public roads." It also calls upon this court to find coverage for the unlawful use of an ATV. See 75 Pa.C.S. §7721(a). Nonetheless, we have considered the two decisions of the Superior Court of Pennsylvania cited by defendants.

In *Uguccioni v. United States Fidelity and Guaranty Company,* 408 Pa. Super. 511, 597 A.2d 149 (1991), the

facts were not complex. Mr. and Mrs. Uguccioni owned a residence insured by USF&G in a Monroe County development. Sadly, an individual was killed operating an ATV owned by the Uguccionis along a private roadway in the development. The USF&G policy contained an exclusion for the use of a motor vehicle defined as a "motorized land vehicle designed for recreational use off public roads, while off an insured location." "Insured location" was defined as "the residence premises and any premises used . . . in connection with the residence premises."

The Superior Court ruled that the "language used in the policy to define an 'insured location' clearly is broad enough to include roads in a private development which are available for use in achieving access to the insured residence." *Uguccioni* at 514, 597 A.2d at 150.

In this case, "insured location" means "the residence premises" and "a premise you use . . . ." That definition would also, we think, be broad enough to include private roads in a development. However, the accident in this case occurred on a public road leading to a private road. Thus, it is a step removed from the facts in *Uguccioni*. We cannot and will not conclude that the language of the exception is sufficiently broad to encompass public roads, particularly since the legislature has ordained it unlawful to operate an ATV on public roads not designated and posted as an ATV road.

The next case cited and relied upon by defendants in their effort to persuade this court that the exception to Exclusion 1(g)(2) applies is *State Farm Fire and Casualty Company v. MacDonald,* 850 A.2d 707 (Pa. Super. 2004).

Mr. MacDonald owned a 10-acre parcel of real estate on which he had his residence. He obtained homeowner's insurance through State Farm.

Mr. MacDonald kept two ATVs on his property, and he and his friends frequently rode the recreational vehicles on the MacDonald property as well as an adjacent field. On this point, evidence adduced at depositions allowed Superior Court to conclude that Mr. MacDonald "repeatedly rode his ATV from his property onto the adjacent field and back." *Id.* at 711.

Tragically, a young man who was a guest of Mr. MacDonald was killed when he collided with trees located on the adjacent field.

The policy in issue excluded coverage for motor vehicles defined as a "motorized . . . all terrain vehicle . . . while off an insured location." Insured location was defined as the residence premises and "any other premises *used* by you in connection with the residence premises."

Superior Court had no difficulty finding coverage since the evidence was clear that MacDonald had used the adjacent field in connection with his residence premises.

In this case, we have no evidence of repeated use of the ATV on the township road where the accident occurred. The case is therefore easily distinguishable.

Our conclusion is that the definition of "insured location" in the policy in this case is not broad enough to include a public road.

As a final argument in support of their contention that the exception to Exclusion 1(g) (2) applies, defendants argue that the underlying negligence that caused the ac-

cident occurred on the insured location. This is so, they say, because the theory of liability is based on negligent entrustment.

A similar argument was made and rejected by both the Superior Court of Pennsylvania and the United States District Court for the Eastern District of Pennsylvania. See *Federal Kemper Insurance Company v. Derr, id.* at 391, 392; *Allstate Insurance Co. v. Drumheller,* 285 F. Supp. 2d 605 (E.D. Pa. 2003). We likewise reject the idea that location of the negligence and not the accident is dispositive.

A final issue remains with respect to the umbrella policy owned by Mr. Gardner. Nationwide contends that the exclusions in that policy and set forth on page 153 of this memorandum preclude coverage. It argues that an ATV is a land motor vehicle and therefore excluded from coverage. Also, Nationwide points out that the umbrella policy becomes operative only when there is an excess obligation to the primary policy, *i.e.,* the homeowner's policies. Since, they argue, there can be no liability on account of the homeowner policy, there can be no liability under the umbrella policy.

Although defendants proffered cursory argument against Nationwide's assertion, it is clear they cannot and do not seriously contend that the umbrella policy provides coverage unrelated to the homeowner's policies. Therefore, since our reluctantly reached decision is that there is no coverage under the homeowner's policies for the accident in this case, there can be no coverage under the umbrella policy.

An order will be entered granting plaintiffs' motion for summary judgment.

## ORDER

And now, January 19, 2006, it is the order of this court that plaintiffs' motion for summary judgment is granted. Counsel for the plaintiffs shall submit to the court a form of final judgment within 20 days.