**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**December 20, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

_____

FARM BUREAU PROPERTY &
CASUALTY INSURANCE COMPANY,

    Plaintiff - Appellee,

v.

BRIAN CLEAVER; SUNDAELEE
CLEAVER; JILL CLEAVER; ERIC N.
CLEAVER,

    Defendants - Appellants.

No. 22-4118
(D.C. No. 4:21-CV-00082-DBB)
(D. Utah)

_____

### ORDER AND JUDGMENT[*]

_____

Before **McHUGH**, **EBEL**, and **EID**, Circuit Judges.

_____

This appeal arises from a dispute between Brian Cleaver, Sundaelee Cleaver, Jill

Cleaver, and Eric N. Cleaver (collectively "the Cleavers") and their homeowner's

insurance provider, Farm Bureau Property & Casualty Insurance ("Farm Bureau"). The

Cleavers sought coverage under their homeowner's insurance policy ("the Policy") for

injuries sustained by E.C., a minor child, in an all terrain vehicle ("ATV") accident on the

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and
Tenth Circuit Rule 32.1.

unpaved public road connecting the Cleavers' property to a nearby gravel pit, where the Cleavers would drive their ATVs to recreate. Pursuant to the Policy, Farm Bureau does not provide coverage for damages or medical expenses arising from the use of a recreational motor vehicle, including an ATV, "while not on an insured location." App. at 129. The Policy further defined 'insured location' to include the Cleavers' residence and "[a]ny premises used by [the Cleavers] in connection with [the residence]." *Id.* at 131. Farm Bureau denied coverage and initiated this action, seeking a declaration of no coverage. *Id.* at 13. Farm Bureau then moved for summary judgment, arguing the roadway where the accident occurred was not an 'insured location' under the Policy and, accordingly, there was no coverage for the ATV accident. The district court agreed and granted summary judgment for Farm Bureau. The Cleavers timely filed this appeal.

Because we agree that under the four corners of the Policy, and the common definition of 'premises,' the public roadway connecting the Cleavers' property to the gravel pit is not an 'insured location,' we affirm the district court's grant of summary judgment in favor of Farm Bureau.

## I.     BACKGROUND

### A.     *Factual History[1]*

The Cleavers owned a home located at 905 North 800 East, in Delta, Utah. The Cleavers had six minor children, including B.C., age ten, and M.C., age eight. North of the Cleavers' property was a gravel pit. The Cleavers owned two ATVs, which they would often drive to the gravel pit for recreational purposes. But the Cleavers did not have any ownership interest in the gravel pit or the road connecting it to their home. The road connecting the Cleavers' property to the gravel pit, 1000 East, was an unpaved, county-owned road open to the public.



The Cleavers purchased a homeowner's insurance policy, issued by Farm Bureau, covering the period from October 24, 2018, through October 24, 2019. The Policy "cover[ed] 'damages' that result from 'bodily injury' or 'property damage' 'caused by'

---

[1] The facts in this matter are undisputed and are drawn from the evidence and stipulations presented at summary judgment. They are taken as true solely for the purposes of this appeal.

3

an 'occurrence' to which the[] coverages apply." *Id.* at 133 (internal quotation marks omitted). However, the Policy provided "no coverage for any 'damages' or 'medical expenses' 'arising out of' the ownership, operation, occupancy, maintenance, use, entrustment to others, loading or unloading of . . . [a]ny 'recreational motor vehicle' while not on an 'insured location'" (the "off-location recreational motor vehicle exclusion"). *Id.* at 129. The Policy defined 'recreational motor vehicle' as "[a] golf cart, snowmobile, two or three wheel motorcycle, motorscooter[], moped, dirt bike, or all terrain vehicle of a utility or recreational nature." *Id.* at 132. The Policy defined an 'insured location' to include "[a]ny premises shown in the Declarations under Insured Locations" and "[a]ny premises used by you in connection with the 'insured locations' listed above." *Id.* at 131. The Policy Declarations listed the Cleavers' property, at "905 N 800 E, Delta, UT 84624" as an "Insured Location." *Id.* at 113.

On June 17, 2019, B.C., M.C., and their fifteen-year-old cousin, E.C., were riding the Cleavers' ATVs at the gravel pit. One of the ATVs broke down, and the children used the functioning ATV to tow the broken one from the gravel pit back to the Cleavers' property. B.C. was driving the functioning ATV, while E.C. steered the broken ATV. While the children were driving on 1000 East, the broken ATV overturned, ejecting and injuring E.C.

E.C. sent Farm Bureau a demand for coverage of her injuries under the Policy. Farm Bureau denied the claim because "[o]nce the ATV drove off Mr. Cleaver's property, the ATV became uninsured." *Id.* at 176. E.C. maintained that Farm Burau's

denial was based on "an incorrect, incomplete analysis of [the] [P]olicy language" and sought settlement related to her personal injuries directly from Mr. Cleaver. *Id.*

### B.    Procedural History

Farm Bureau initiated this action against the Cleavers, filings its Complaint for Declaratory Relief in the United States District Court for the District of Utah. Farm Bureau sought declarations "that there is no coverage under the Policy for the accident which occurred on June 17, 2019" and "that it has no duty to defend or indemnify with respect to any lawsuit brought as a result of the accident." *Id.* at 13. The Cleavers' Answer admitted to the factual allegations of Farm Bureau's Complaint but maintained that "the accident happened on an 'insured location' as defined in the [P]olicy as it occurred on the common area of the insured's location." *Id.* at 80 Thus, the Cleavers contested Farm Bureau's entitlement to declarations of no coverage and no duty to defend or indemnify.

Farm Bureau moved for summary judgment, arguing the public roadway where the accident occurred was not an 'insured location' under the Policy and, accordingly, there was no coverage for the ATV accident. Farm Bureau contended the weight of authority supported finding a public roadway is not an insured location for purposes of a homeowner's insurance policy. Farm Bureau further argued the Cleavers' proposed interpretation of 'insured location' would render the off-location recreational motor vehicle exclusion meaningless by extending coverage to anywhere the Cleavers chose to drive their ATVs to-or-from their property. The Cleavers responded that the Policy is "fairly susceptible" to their interpretation of "insured location" to include the road where

5

the accident occurred because the Policy "does not use clear and unmistakable language to communicate that a public road is not an 'insured location.'" *Id.* at 180. The Cleavers specifically argued the Policy defines 'insured location' broadly, to include "*[a]ny* premises used by you in connection with the [property]," *id.* at 181 (emphasis added), and does not limit its definition of 'recreational motor vehicle' to vehicles "designed for recreation off public roads," *id.* at 185. Thus, the Cleavers contended that ambiguity or uncertainty in the off-location recreational motor vehicle exclusion must be construed in favor of coverage.

The district court granted Farm Bureau's motion for summary judgment, concluding the public road where the accident occurred was not an 'insured location' under the Policy. Looking to the Policy's definition of an insured location as 'premises,' the court found that "premises generally means either land in which the insured has an ownership or possessory interest or else some structure." *Id.* at 234. While the court expressly "d[id] not find that the term 'premises' in the Policy is necessarily limited to land in which the insured has an interest or to a structure," it concluded that, "given the specific policy language here, it would not be reasonable to interpret the homeowner[']s policy to cover a recreational motor vehicle accident on a public road." *Id.* at 231. The court found this interpretation was reinforced by the common definition of 'premises' and by persuasive caselaw from the Utah Court of Appeals and other jurisdictions. Thus, the court held the Policy was not reasonably susceptible to the Cleavers' proposed interpretation and granted summary judgment for Farm Bureau.

## II.    DISCUSSION

On appeal, the Cleavers raise three arguments for reversing the district court's order granting summary judgment for Farm Bureau.[2] First, the Cleavers argue the court erroneously read specificity into the phrase 'any premises' as used in the Policy definition of 'insured location.' Second, the Cleavers contend the court failed to liberally construe ambiguity and uncertainty in the usual meaning of 'premises' in favor of providing coverage to the Cleavers. And third, the Cleavers argue the court erred by failing to strictly construe the off-location recreational motor vehicle exclusion against Farm Bureau where the Policy definition of 'recreational motor vehicle' includes reference to several vehicles "designed for use on public roads." Cleaver Br. at 11.

We agree with the district court that the Policy language is not reasonably susceptible to the Cleavers' proposed interpretation and there is no ambiguity to liberally interpret in favor of coverage. Based on the plain language of the Policy and the common

---

[2] The Cleavers also moved to certify the following question to the Utah Supreme Court: "Can a residential public road constitute an 'insured location' under an insurance policy that defines 'insured location' as 'any premises used by you in connection with the "insured locations" listed above'?" Appellants' Motion to Certify a Question of State Law at 1. We deny certification because there is ample guidance from the Utah Supreme Court regarding insurance contract interpretation and the issue at hand is not so novel or unprecedented as to warrant troubling our sister state courts. *See Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007) ("Under our own federal jurisprudence, we will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves."); *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988) ("Certification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law.").

understanding of 'premises,' an 'insured location' does not include the public roadway connecting the Cleavers' property to the gravel pit. Thus, we affirm the district court's order granting summary judgment for Farm Bureau.

### A.    Standard of Review

We review a district court's grant of summary judgment de novo. *See Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016). In doing so, we stand in the same shoes as the district court and "must view the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Id.* We will uphold the decision to grant summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)). "A dispute is genuine when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' and a fact is material when it 'might affect the outcome of the suit under the governing [substantive] law.'" *Bird*, 832 F.3d at 1199 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Likewise, "we review the district court's interpretation and determination of state law de novo." *ClearOne Commc'ns, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 494 F.3d 1238, 1243 (10th Cir. 2007). "When interpreting Utah's law, we must look to rulings of the highest state court, and, if no such rulings exist, must endeavor to predict

how that high court would rule" if faced with the same facts and issue.[3] *Marcantel v. Michael & Sonja Saltman Fam. Tr.*, 993 F.3d 1212, 1221 (10th Cir. 2021) (internal quotation marks omitted); *see also ClearOne Commc'ns, Inc.*, 494 F.3d at 1243 ("Where the state's highest court has not addressed the issue presented, the federal court must determine what decision the state court would make if faced with the same facts and issue."). In making such a prediction, we may consider decisions from Utah's intermediate court of appeals, "appellate decisions in other states with similar legal principles," and "the general weight and trend of authority in the relevant area of law." *Marcantel*, 993 F.3d at 1222.

### B.     *Insurance Contract Interpretation Under Utah Law*

Under Utah law, "[i]nsurance policies are contracts between the insurer and the insured and must be analyzed according to principles of contract interpretation." *Compton v. Houston Cas. Co.*, 393 P.3d 305, 310 (Utah 2017). We first look to the policy and "construe its terms to give effect to the intentions of the parties" as "gleaned from . . . the text of the contract itself" and "in the light of existing circumstances, including the purpose of the policy." *Id.* We look to the language of the policy and "consider each contract provision . . . in relation to all of the others, with a view toward giving effect to all and ignoring none." *Encon Utah, LLC v. Fluor Ames Kraemer, LLC*, 210 P.3d 263,

---

[3] "Because this is a diversity action, we apply the substantive law of the forum state." *Marcantel v. Michael & Sonja Saltman Fam. Tr.*, 993 F.3d 1212, 1221 (10th Cir. 2021). Both parties agree Utah law applies to the interpretation and application of the Policy here.

267 (Utah 2009). We consider terms' meaning as "to a person of ordinary intelligence and understanding, viewing the matter fairly and reasonably, in accordance with the usual and natural meaning of the words." *Compton*, 393 P.3d at 310. If, based on this analysis, the policy terms are unambiguous, we adhere to the language's plain meaning. *See id.*; *Encon Utah, LLC*, 210 P.3d at 267; *Quaid v. U.S. Healthcare, Inc.*, 158 P.3d 525, 527 (Utah 2007); *Saleh v. Farmers Ins. Exch.*, 133 P.3d 428, 434 (Utah 2006).

We adhere to the same principles when interpreting exclusions from coverage. *See Quaid*, 158 P.3d at 528–29 ("Exclusions from coverage are interpreted no differently when the policy language is clear." (citing *S.W. Energy Corp. v. Cont'l Ins. Co.*, 974 P.2d 1239 (Utah 1999) (holding that unambiguous language is given its ordinary meaning regardless of whether the specific provision works to affirm or deny coverage); *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1275 (Utah 1993) (rejecting the argument that an exclusion was ambiguous and unenforceable because it was inconsistent with the expectation of coverage); *Allen v. Prudential Prop. & Cas. Ins. Co.*, 839 P.2d 798, 803 (Utah 1992) (concluding that even though "an insurance contract is adhesive [that] is no reason, in itself, to enforce what might be found to be the reasonable expectations of the insured when those expectations conflict with the plain terms of the policy")). "We will not make a better contract for the parties than they have made for themselves . . . [or] avoid the contract's plain language to achieve an equitable result." *Bakowski v. Mountain States Steel, Inc.*, 52 P.3d 1179, 1185 (Utah 2002).

However, if we determine the terms are ambiguous, we will resolve "any ambiguity or uncertainty in the language of an insurance policy . . . in favor of coverage."

*Compton*, 393 P.3d at 310; *Farmers Ins. Exch. v. Versaw*, 99 P.3d 796, 798 (Utah 2004)

("[A]mbiguous or uncertain language in an insurance contract that is fairly susceptible to

different interpretations should be construed in favor of coverage."). A term is ambiguous

if it is "unclear, it omits terms, or the terms used . . . may be understood to have two or

more plausible meanings." *Quaid*, 158 P.3d at 528; *see also Compton*, 393 P.3d at 310

("An ambiguity exists when a provision is capable of more than one *reasonable*

interpretation because of uncertain meanings of terms, missing terms, or other facial

deficiencies." (internal quotation marks omitted)). To be plausible, the proposed

interpretation "must be based upon the usual and natural meaning of the language used

and may not be the result of a forced or strained construction." *Saleh*,133 P.3d at 433.

While "both readings might appear in isolation to be permissible constructions, if all but

one of the meanings is rendered unreasonable by context, the provision is unambiguous."

*Compton*, 393 P.3d at 311 (internal quotation marks omitted). Policy terms will "not

qualify as ambiguous simply because one party seeks to endow them with a different

interpretation according to his or her own interests." *Saleh*,133 P.3d at 433.

### C.    *'Insured Location' Under the Policy*

The Policy expressly forecloses coverage "for any 'damages' or 'medical

expenses' 'arising out of' the ownership, operation, occupancy, maintenance, use,

entrustment to others, loading or unloading of . . . [a]ny 'recreational motor vehicle'

while not on an 'insured location.'" App. at 129. The parties agree the ATV ridden by

E.C. qualifies as a 'recreational motor vehicle' under the Policy. The sole interpretative

issue presented at summary judgment and on appeal then is whether the location of the

accident was an 'insured location' under the Policy. Both parties look to the Policy

definition of 'insured location' as including "[a]ny premises used by you in connection

with the [premises shown in the Declarations]." *Id.* at 131. Thus, we ask whether "[a]ny

premises used by [the Cleavers] in connection with [their residence]" can be reasonably

understood to include the location of the accident, north of the Cleavers' property on

1000 East. *Id.*

The Cleavers contend the district court erred by interpreting 'any premises' as

unambiguously excluding the accident location because (1) the Policy does not define

'any premises' and the term should be read broadly to include the accident location,

(2) ambiguity in the meaning of 'premises' should be construed in favor of providing

coverage; and (3) the Policy does not limit 'recreational motor vehicles' to those

designed for use off public roads.[4] Farm Bureau responds that the district court correctly

concluded the accident location was not an 'insured location' by interpreting the term

_____

[4] The Cleavers also argue the district court erred because it "never considered that the location was 'used in connection' with the Cleavers' property." Cleaver Br. at 14. The Cleavers contend the road connecting their property to the gravel pit was 'used in connection' with their property because "[t]hey visited the area often." Reply at 8. But, because the Policy defines insured location as "any *premises* used by you in connection with [your insured property]," even if the accident location was 'used in connection' with the Cleavers' residence, it is not an insured location under the Policy if it is not a 'premises.' App. at 131 (emphasis added); *see id.* at 230–32 ("[B]ut the 'in connection with' language matters only if the place where the accident occurred was a 'premises.'"). Because we conclude the term 'premises' cannot reasonably be understood to include the public road where the accident occurred, we need not address whether that road was 'used in connection' with the Cleavers' residence.

'premises' consistent with dictionary definitions, its other uses in the Policy, and the Policy's purpose.

We also conclude that the term 'premises' is unambiguous as used in the Policy and "in accordance with [its] usual and natural meaning." *Compton*, 393 P.3d at 310. Thus, we affirm the district court's order granting summary judgment for Farm Bureau.

**1.     'Premises' in the Policy**

When interpreting the Policy's terms, we begin with "the text of the contract itself." *Compton*, 393 P.3d at 310. We look to the Policy's language and "consider each . . . provision in relation to all of the others, with a view toward giving effect to all and ignoring none." *Encon Utah, LLC*, 210 P.3d at 267. The Policy does not define 'premises' but does specifically define 'farm/ranch premises' and 'residence premises.' 'Farm/ranch premises' is defined as: "[l]and (including private approaches) you own, rent, or lease primarily for agricultural use; and . . . [f]arm/[r]anch structures, including residences on such land." App. at 130. 'Residence premises' is defined as: "[a] one to four family dwelling in which you reside, including the grounds, structures and private approaches; or . . . [t]hat part or unit of any condominium, townhouse, apartment, or other building in which you reside." *Id.* at 132.

The Cleavers argue the district court erred by imputing specificity from these defined terms to the term 'any premises' in the Policy definition of 'insured location.' The Cleavers construe the district court's order as holding that 'any premises' "was limited to land with structures, or in which the Cleavers had an ownership or possessory interest." Cleaver Br. at 12. They contend that, by looking to the Policy definitions of

13

'farm/ranch premises' and 'residence premises,' the court "read[] additional requirements into the definition of 'any premises' and disregard[ed] a purposeful omission." *Id.*

But, as Farm Bureau points out, the district court explicitly "d[id] not find that the term 'premises' in the Policy is necessarily limited to land in which the insured has an interest or to a structure." Farm Bureau Br. at 15 (quoting App. at 231). Rather, the court looked to other usages of the undefined term, 'premises,' in the Policy to understand how the term was used throughout the Policy. The court found "nothing in the Policy itself suggesting the possibility that a public road could be a 'premises.'" App. at 231. On our own review of the Policy and its use of the term 'premises,' we agree.

The difference between the term 'any premises' as used in the 'insured location' definition and in the defined terms 'farm/ranch premises' and 'residence premises' is not the term 'premises' but the modifiers 'any,' 'farm/ranch,' and 'residence.' Across its defined uses in the Policy, 'premises' is consistently used to mean land or structures, including the grounds and private approaches, which the insured owns, rents, leases, or occupies. The modifiers attached to 'premises' at different points in the Policy are purposeful in distinguishing between "[a]ny premises," *id.* at 131, premises that are "primarily for agricultural use," *id.* at 130, and premises "in which you reside," *id.* at 132. The Policy draws distinction between the use of the premises. But in both defined terms, 'farm/ranch premises' and 'residence premises,' 'premises' consistently refers to land, its structures, and private approaches that are owned, rented, leased, or used by the Cleavers.

The Cleavers argue that 'any premises,' is not restricted to premises in which the insured has a legal interest because "'[a]ny' means 'any.'" Cleaver Br. at 13 (quoting

14

*Allstate Ins. Co. v. Drumheller*, 185 F. App'x 152, 161 (3d Cir. 2006) (unpublished)). But just as "[a]ny means any," Cleaver Br. at 13, 'premises' means 'premises.' We may no more read additional requirements into the Policy than we may ignore the effect of the terms used. *See Encon Utah, LLC.* 210 P.3d at 267 ("We . . . consider each contract provision in relation to all of the others, with a view toward giving effect to all and ignoring none." (ellipses and internal quotation marks omitted)). The term 'premises' must be interpreted to have a consistent meaning throughout the Policy.

### 2.    Usual Meaning of 'Premises'

Although the term 'premises' appears in other defined Policy terms, it is not itself a defined term. Therefore, we look to its meaning as understood by "a person of ordinary intelligence . . . , in accordance with the usual and natural meaning of the word[]." *Compton*, 393 P.3d at 310. "The starting point for discerning such meaning is the dictionary." *Hi-Country Prop. Rts. Grp. v. Emmer*, 304 P.3d 851, 856 (Utah 2013) (discussing interpretation of terms' "ordinary meaning" in the context of statutory interpretation); *see also Mind & Motion Utah Invs., LLC v. Celtic Bank Corp.*, 367 P.3d 994, 1002 (Utah 2016) (using Black's Law Dictionary to define contract terms); *Glenn v. Reese*, 225 P.3d 185, 189 (Utah 2009) (using Webster's II New College Dictionary to define contract terms).

The Cleavers argue that "[p]remises is an elastic and elusive term, and it does not have one definite and fixed meaning." Cleaver Br. at 20 (quoting *Fremont Ins. Co. v. Izenbaard*, 820 N.W.2d 902, 903 (Mich. 2012) (quoting Black's Law Dictionary (6th ed. 1990))). According to the Cleavers, 'premises' may mean "simply an area of land." *Id.*

15

They argue the district court erred by failing to recognize ambiguity in the meaning of 'premises' and construe such ambiguity in favor of coverage.

In construing 'premises,' the district court looked to Meriam-Webster Dictionary and the 11th edition of Black's Law Dictionary. According to Meriam-Webster Dictionary, 'premises' means "a tract of land with the buildings thereon" or "a building or part of a building usually with its appurtenances (such as grounds)." *Premises*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/premise (last visited Oct. 8, 2023). According to the 11th edition of Black's Law Dictionary, published in 2019, 'premises' means "[a] house or building, along with its grounds; esp., the buildings and land that a shop, restaurant, company, etc. uses." *Premises*, Black's Law Dictionary (11th ed. 2019).[5] Farm Bureau additionally points to the American Heritage Dictionary, which defines 'premises' as "[l]and, the buildings on it, or both the land and the buildings on it[;]" or "[a] building or particular portion of a building." Farm Bureau Br. at 17 (quoting *premises*, American Heritage Dictionary, https://www.ahdictionary.com/word/search.html?q=premise (last visited Dec. 1, 2023)).

The Cleavers look instead to the Michigan Supreme Court's interpretation of 'premises' in *Izenbaard*, 820 N.W.2d at 903. In *Izenbaard*, the Michigan Supreme Court interpreted 'premises' by looking to Random House Webster's College Dictionary and

---

[5] The 10th edition of Black's Law Dictionary, published in 2014, was the most recent edition at the time the Policy took effect, in 2018. The 10th edition's definition of 'premises' is identical to that in the 11th edition. *Compare Premises*, Black's Law Dictionary (10th ed. 2014) *with Premises*, Black's Law Dictionary (11th ed. 2019).

the 6th edition of Black's Law Dictionary. *Izenbaard*, 820 N.W.2d at 903. According to *Izenbaard*, Random House Webster's College Dictionary defines 'premises' as "a tract of land *including* its buildings." *Id.* (quoting Random House Webster's College Dictionary). *Izenbaard* also cites the 6th edition of Black's Law Dictionary, published in 1990, for the definition of 'premises' as "[l]and with its appurtenances and structures thereon." *Id.* (quoting Black's Law Dictionary (6th ed. 1990)). *Izenbaard* further quotes commentary from the 6th edition of Black's Law Dictionary, stating "[p]remises is an elastic and inclusive term, and it does not have one definite and fixed meaning; its meaning is to be determined by its context and is dependent on the circumstances in which used, and may mean a room, shop, building, or any definite area." *Id.* (quoting Black's Law Dictionary (6th ed. 1990)). The 10th and 11th editions of Black's Law Dictionary include no such commentary. *See Premises*, Black's Law Dictionary (10th ed. 2014); *Premises*, Black's Law Dictionary (11th ed. 2019).

In the context of the Policy, these definitions of 'premises' do not demonstrate that the term "may be understood to have two or more plausible meanings," *Quaid*, 158 P.3d at 528, or has "uncertain meaning[]," *Compton*, 393 P.3d at 310. All the cited sources affirmatively define 'premises' as an area of land and its buildings, structures, or other appurtenances. This definition reaches broader than the Cleavers' residence, as indeed it must for the inclusion of "[a]ny premises used by you in connection with the [residence]" in the definition of 'insured location' to have any meaning. App. at 131. But it is not fairly susceptible to the Cleavers' proposed interpretation of 'premises' as including a location, some distance away from their property, on a public road, connecting a nearby

17

recreational area to their property. Such an interpretation would amount to rewriting 'any premises' to mean 'anywhere' or 'any location.'

### 3.     Purpose of the Policy

Additionally, the Cleavers' interpretation would "blur[] the distinction between homeowner's and automobile insurance." Farm Bureau Br. at 22 (quoting *Hudnell v. Allstate Ins. Co.*, 945 P.2d 363, 367 (Ariz. Ct. App. 1997)). When interpreting Policy terms, we view their ordinary meaning "in the light of existing circumstances, including the purpose of the policy." *Compton*, 393 P.3d at 310. "The primary purpose of a homeowner[']s policy is to provide package coverage for exposures incidental to home ownership . . ." *Fire Ins. Exch. v. Alsop*, 709 P.2d 389, 390 (Utah 1985); *see also Allen v. Prudential Prop. & Cas. Ins. Co.*, 839 P.2d 798, 808 (Utah 1992) (J. Stewart, concurring) ("As a general rule, the purpose of homeowner's insurance is to protect the owner from property loss due to a disaster, such as fire, and from liability if someone is injured on the premises."). And "[t]he purpose of a vehicle exclusion in a homeowner's policy is to require the insured to obtain specific liability insurance on motor vehicles except under the limited exceptions enumerated in the policy." *Hudnell*, 945 P.2d at 366. Contrary to these purposes, the Cleavers' proposed interpretation of 'premises' would extend the definition of 'insured location' under the Policy to permit coverage for incidents occurring anywhere they might drive their recreational motor vehicles to-or-from their residence. *See Nationwide Mut. Fire Ins. Co. v. Jones*, 695 F. Supp. 2d 978, 985 (D. Ariz. 2010) (denying coverage under a homeowner's policy for an ATV accident because "[t]here is no persuasive distinction between the public cul-de-sac in front of Jones's

18

house [where the accident occurred] and an ordinary public street" and granting coverage would increase Nationwide's risk "beyond that which it assumed when it issued the policy" and "'blur[] the distinction between homeowner's and automobile insurance.'" (quoting *Hudnell*, 945 P.2d at 367)). This would effectively convert the exception to the exclusion of recreational motor vehicles for incidents occurring on an insured location into a broad grant of liability coverage for recreational motor vehicles. Thus, the Cleavers' proposed interpretation of 'premises' is inconsistent with the context and purpose of the Policy as a whole and the off-location recreational motor vehicle exclusion.

Furthermore, as Farm Bureau observes, the Cleavers' proposed interpretation includes no limiting principle and would result in unbounded liability coverage for recreational motor vehicles used anywhere the Cleavers drive them to-or-from their property. The Cleavers assert their proposed interpretation would not create such boundless coverage because they do not contend "coverage should be afforded for an incident involving a recreational motor vehicle used for a non-recreational purpose some distance from the property, like a trip to the grocery store." Reply at 8. But the Cleavers do not indicate how the Policy definition of 'insured location' distinguishes between a road used to access a grocery store and one used to access a nearby recreation area. Nor do the Cleavers suggest any limitation on how far from their residence their interpretation of 'any premises' would stretch to cover their use of the ATVs, so long as such use began or ended at their residence. 'Any premises' cannot reasonably mean anywhere a recreational motor vehicle may travel between the Cleavers' residence and recreational

19

areas. Such an interpretation is unmoored from the Policy language and contrary to its purpose.

**4.      'Recreational Motor Vehicles' in the Policy**

Last, the Cleavers contend the Policy could reasonably be interpreted to cover an ATV accident on a public road because the Policy definition of recreational motor vehicles includes vehicles designed for use on public roads. Indeed, the Policy defines 'recreational motor vehicle' to include vehicles commonly understood to operate on public roads, namely a motorcycle, motorscooter, or moped. *See* App at 132 (defining 'recreational motor vehicle' as "[a] golf cart, snowmobile, two or three wheel motorcycle, motorscooter[], moped, dirt bike, or all terrain vehicle of a utility or recreational nature"). But the Policy's coverage for recreational motor vehicles is based on their presence on an 'insured location', not their foreseeable area of use. The Cleavers' argument to the contrary bypasses the Policy definition of 'insured location' and would extend coverage for 'recreational motor vehicles' beyond the Policy's terms.

The Policy definition of 'insured location' does not reference or incorporate the defined term 'recreational motor vehicle.' App. at 131. And while the off-location recreational motor vehicle exclusion does reference 'insured location,' it does so to provide an exception to the exclusion of recreational motor vehicles—not to expand the definition of insured location based on the foreseeable presence of recreational motor vehicles. *Id.* at 129. The Policy provides limited coverage for "recreational motor vehicle[s]" on an "insured location"—that is, on a *premises* used by the [Cleavers] in connection with the [residence]." *Id.* at 129, 131 (emphasis added). It is immaterial

whether the location is one where a "golf cart, snowmobile, two or three wheel motorcycle, motorscooter[], moped, dirt bike, or all terrain vehicle" may foreseeably be driven. *Id.* at 132. Because the Policy definition of 'insured location' is not connected to or dependent on the definition of 'recreational motor vehicle,' we are unpersuaded by the Cleavers' argument for invoking the latter to expand the former.[6]

---

[6] The Cleavers also cite to caselaw from other jurisdictions, holding that policy language defining 'recreational motor vehicles' as limited to vehicles designed for use *off* public roads, contrary to the language of their Policy, weighs against finding such vehicles were covered when used *on* public roads. *See Hudnell v. Allstate Ins. Co.*, 945 P.2d 363, 367 (Ariz. Ct. App. 1997); *Indiana Ins. Co. v. Dreiman*, 804 N.E.2d 815, 820 (Ind. Ct. App. 2004); *Nationwide Mut. Ins. Co. v. Gardner*, 79 Pa. D. & C.4th 150, 163 (Pa. Commw. Ct. 2006); *Shelter Mut. Ins. Co. v. Davis*, 715 N.W.2d 769 (Iowa Ct. App. 2006) (unpublished). The Cleavers contend that, if recreational motor vehicles designed for *off-road use* are not covered when operated on roads, it would stand to reason that vehicles designed for *on-road use* would be covered when used as such. But none of the Cleavers' cited cases relied exclusively on the off-road designation for recreational motor vehicles in denying coverage for occurrences on public roads. *See Hudnell*, 945 P.2d at 366–67 (finding coverage for incident on a public road would contravene the purpose of a vehicle exclusion in a homeowner's policy and unreasonably extend coverage); *Dreiman*, 804 N.E.2d at 820–21 (finding coverage for incident on public road would contravene the plain meaning of 'premises' and the general principles of premises liability); *Gardner*, 79 Pa. D. & C.4th at 163–64 (finding coverage for incident on public road was not encompassed by policy definition of 'insured location' and would contravene laws prohibiting operation of ATVs on public roads); *Davis*, 715 N.W.2d at *6–7 (finding coverage for incident on public road would contravene the purpose of a homeowner's policy vehicle exclusion, "remove any reasonable geographic limitation on coverage," and exceed the definition of 'insured location'). Moreover, other courts' finding that 'recreational motor vehicles' which are limited to off-road vehicles are not covered on public roads does not support the inverse proposition that defining 'recreational motor vehicles' to include street-legal vehicles means they must be covered when operating on public roads. Indeed, the Cleavers have identified no case from any jurisdiction that has extended homeowner's policy coverage to a motor vehicle accident on a public road used to access a recreational area owned by a third party.

### III.    CONCLUSION

Because the term 'premises,' as used in the Policy and in accordance with its plain meaning, unambiguously excludes the public roadway connecting the Cleavers' property to the gravel pit, we AFFIRM the district court's order granting summary judgment for Farm Bureau.

Entered for the Court

Carolyn B. McHugh
Circuit Judge